In the Matter of the Claim of: RUPERTO MALDONADO, Claimant-Appellant, and TRANSPORT INDEMNITY, Respondent-Appellee

NO. 9323

(CIVIL NO. 71476)

MAY 11, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Claimant Ruperto Maldonado (Maldonado) appeals the circuit court judgment affirming the Insurance Commissioner's (Com-

missioner) denial of his no-fault wage loss benefit claim against Transport Indemnity (Indemnity). The Commissioner had ruled that since Maldonado was receiving total monthly workers' compensation income benefits[1] which exceeded the basic statutory no-fault monthly wage loss benefits limit, he was ineligible for any no-fault monthly wage loss benefits[2] under Hawaii Revised Statutes (HRS) § 294-5(b) (1976, as amended).

The issue on appeal is whether, in computing Maldonado's entitlement to no-fault monthly wage loss benefits, Maldonado's total monthly income benefits under workers' compensation ($931.66) were properly deducted from the basic statutory no-fault monthly wage loss benefits limit ($800) rather than from his actual monthly wage loss ($1,534). We answer yes and affirm.

In the administrative proceedings, the parties stipulated to the following facts. On August 26, 1980, Maldonado was injured in a motor vehicle accident while operating a bus as a driver for MTL, Inc. (MTL). Thereafter, he was unable to return to work. At the time of the accident, Maldonado's monthly compensation was $1,534. His workers' compensation income benefits totaled $931.66 per month.

Maldonado made a claim to Indemnity, MTL's insurer, for no-fault benefits of $602.34, representing the difference between his actual monthly wage loss and his monthly workers' compensation benefits. The claim was denied based on HRS § 294-5(b) which

---

[1] In case of total or partial disability of an employee, the Workers' Compensation Law, Hawaii Revised Statutes (HRS) chapter 386 (1976 & Supp. 1983) provides for weekly income benefits equal to a certain percentage of the employee's "average weekly wages." *See* HRS §§ 386-31 & -32. The term "wages" is defined in HRS § 386-1.

[2] HRS § 294-2(10) generally provides that "no-fault benefits" include (A) medical and hospital expenses, (B) expenses for various types of therapy and rehabilitation, (C) monthly earnings loss, and (D) expenses for lost services, funeral expenses, and attorney's fees and costs. The aggregate limit for these no-fault benefits is $15,000 per person. Subsection C specifically limits no-fault benefits for monthly earnings loss to the lesser of $800 per month or actual lost earnings.

HRS § 294-2(7)(A) defines the "monthly earnings" of a regularly employed person to mean "one-twelfth of the average annual compensation before state and federal income taxes at the time of injury or death."

In this opinion, the terms "earnings loss" and "wage loss" are used interchangeably.

provides:

> All no-fault benefits shall be paid secondarily and net of any benefits a person is entitled to receive because of the accidental harm from workers' compensation laws; provided that this section shall be inapplicable to benefits payable to a surviving spouse and any surviving dependent as provided under section 294-4. If the person does not collect such benefits under the workers' compensation laws by reason of the contest of his right to so collect by the person or organization responsible for payment thereof, the injured person, if otherwise eligible, shall, nevertheless, be entitled to receive no-fault benefits and upon payment thereof the no-fault insurer shall be subrogated to the injured person's rights to collect such benefits.

Maldonado subsequently requested a review by the Motor Vehicle Insurance Division of the Department of Regulatory Agencies.[3] The matter was referred to the department's hearings officer for hearing and submission of written findings, conclusions, and recommended order to the Commissioner.

On November 18, 1981, the hearings officer entered his Findings of Fact, Conclusions of Law and Recommended Order (Recommended Order) recommending to the Commissioner that Indemnity's "denial of no-fault benefits was improper." Record at 95.

Upon review of the Recommended Order, the Commissioner entered her Final Decision and Order (Order) on March 16, 1982. The Order rejected the hearings officer's recommendation and concluded that Indemnity's "denial of no-fault benefits was proper." Record at 45.

After the Commissioner's denial of his motion for reconsideration, Maldonado appealed to the circuit court on May 28, 1982, pursuant to HRS §§ 431-68 and 91-14.[4] On February 22, 1983, the

---

[3] By Act 204, § 8, 1982 Haw. Sess. Law 384, 388, the legislature changed the name of the Department of Regulatory Agencies to the Department of Commerce and Consumer Affairs.

[4] Although HRS § 431-68 provides the specific procedural rules for appeal from the Insurance Commissioner's order, HRS § 431-69 states that such an "appeal shall be taken in the manner provided in Chapter 91," Hawaii's Administrative Procedure Act.

circuit court entered its judgment affirming the Commissioner's Order and denial of the motion for reconsideration. After the circuit court's Order Denying Maldonado's Motion for Reconsideration was entered on April 27, 1983, Maldonado appealed.

## I.

Our review of the circuit court's review of an agency's decision is based on the "right/wrong standard." *Outdoor Circle v. Harold K. L. Castle Trust Estate,* 4 Haw. App. 633, 675 P.2d 784 (1983), *cert. denied,* 67 Haw. 1, 677 P.2d 965 (1984). *See also Chock v. Bitterman,* 5 Haw. App. 59, 678 P.2d 576 (1984). In determining whether the circuit court's decision was right or wrong, we apply the appropriate subsection of HRS § 91-14(g) to the agency's decision. Since the issue here is whether the Commissioner made an error of law in her construction of HRS § 294-5(b), the standard under HRS § 91-14(g)(4) is applicable.

## II.

Maldonado contends that the Commissioner erred since (1) the agency's interpretation of HRS § 294-5(b) is inconsistent with basic subrogation law principles, (2) Hawaii's public policy favors the stacking of benefits in order to fully compensate the injured insured, and (3) the plain language of the statute itself makes clear the legislative intent that "no-fault wage loss benefits are to be excess of any worker's [sic] compensation benefits." Opening Brief at 6.

On the other hand, Indemnity argues that the Commissioner properly interpreted HRS § 294-5(b) since (1) the wording of the section, along with other provisions of Hawaii's Motor Vehicle Accident Reparations Act (No-Fault Act) and the legislative intent, support the interpretation, (2) case law dealing with the issue in other jurisdictions lend additional support, (3) the general principles of subrogation are inapplicable to this particular provision, and (4) public policy in favor of stacking does not mandate it where the contrary legislative intent is clear.

We are cognizant of decisions in other jurisdictions which support both views. *See, e.g., Comeau v. Safeco Insurance Company of*

*America,* 356 So.2d 790 (Fla. 1978); *United States Fidelity & Guaranty Co. v. Smith,* 580 S.W.2d 216 (Ky. 1979) (in support of stacking); *see also Smelser v. Criterion Insurance Co.,* 293 Md. 384, 444 A.2d 1024 (1982); *Featherly v. AAA Insurance Co.,* 119 Mich. App. 132, 326 N.W.2d 390 (1982) (no-fault monthly wage loss benefits are reduced by monthly workers' compensation wage loss benefits). The holdings of these cases are largely dependent on each state's particular no-fault legislation. Based on our statute and its underlying legislative history, we agree with the arguments presented by Indemnity.

### III.

#### A.

The parties agree that "secondary" in HRS § 294-5(b) means that workers' compensation income benefits must be paid first and that no-fault wage loss benefits are paid only as to the remaining wage loss not covered under the workers' compensation law. They disagree, however, as to the meaning of the term "net." Maldonado claims that "net" refers to the difference between his total actual monthly wage loss and his monthly workers' compensation income benefits. On the other hand, Indemnity contends that "net" refers to the difference between the latter primary benefits and the statutory no-fault monthly wage loss benefits limit.

"[W]here the language of the statute is ambiguous or of doubtful meaning . . . the court may look beyond express language of the statute to ascertain the legislative intent." *State v. Tavares,* 63 Haw. 509, 511, 630 P.2d 633, 635 (1981). *Cf. Barcena v. The Hawaiian Insurance & Guaranty Co., Ltd.,* 67 Haw. 97, 678 P.2d 1082 (1984). Thus, the court under such circumstances may resort to extrinsic aids in construing a statute, including its legislative history, *see In re Hawaiian Telephone Co.,* 61 Haw. 572, 608 P.2d 383 (1980); *Lussier v. Mau-Van Development, Inc. II,* 4 Haw. App. 421, 667 P.2d 830 (1983); *Educators Ventures, Inc. v. Bundy,* 3 Haw. App. 435, 652 P.2d 637 (1982), in order to accomplish its primary objective of ascertaining and giving effect to the intent of the legislature. *Survivors of Medeiros v. Maui Land & Pineapple Co.,* 66 Haw. 290, 660 P.2d 1316 (1983); *In re Hawaiian Telephone Co., supra.*

The legislative history underlying HRS § 294-5(b) is enlightening. When the legislature first contemplated enacting HRS chapter 294, Hawaii's No-Fault Act, the conference committee report stated that the five purposes of the law were to:

(1) Provide for a speedy, adequate and equitable reparation for those injured or otherwise victimized;

(2) Provide for the stabilization and reduction of motor vehicle liability insurance premium rates;

(3) Provide for insurance coverage for all who require it, at a cost within the reach of every licensed driver;

(4) Provide for a compulsory insurance system;

(5) Provide for adequate regulatory control.

Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635-36. *See also* Hse. Conf. Comm. Rep. No.13, in 1973 House Journal, at 1219.

With particular reference to HRS § 294-5(b), the legislature stated that:

> [*T*]*he amount paid* [in no-fault benefits] *would be reduced by any benefit from other sources paid to cover the same loss. Such other collateral sources are* HMSA or Kaiser health plans, *state* and federal *workmen's compensation,* and federal social security benefits.

Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 637 (emphasis added). *See also* Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1221. The legislature thereby expressed its intent that "all benefits a victim may receive from . . . workmen's compensation . . . shall be deducted from no-fault benefits which are due." Sen. Conf. Comm. Rep. No. 28, in 1974 Senate Journal, at 780. *See also* Hse. Conf. Comm. Rep. No. 27 [sic], in 1974 House Journal, at 867.

## B.

Maldonado nevertheless contends that (1) "net" under HRS § 294-5(b) means essentially the same as "secondary" and (2) despite the Commissioner's interpretation, the first sentence of that section "does not purport to qualify or be qualified by the second sentence," Opening Brief at 4, which relates to the no-fault insurer's right to subrogation only in contested workers' compensation cases. We disagree.

A cardinal rule of statutory construction is that "a statute ought upon the whole be so construed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant." *In re City & County of Honolulu Corp. Counsel*, 54 Haw. 356, 373, 507 P.2d 169, 178 (1973). *See also Lopez v. Board of Trustees, Employees' Retirement System*, 66 Haw. 127, 657 P.2d 1040 (1983); *Armbruster v. Nip*, 5 Haw. App. 37, 677 P.2d 477 (1984). Our supreme court has also stated that a provision of a comprehensive statute should be construed in context with other provisions of the same statute and in the light of the general legislative design. *See Hawaii Public Employment Relations Board v. United Public Workers, Local 646*, 66 Haw. 461, 667 P.2d 783 (1983); *Hudson v. Uwekoolani*, 65 Haw. 468, 653 P.2d 783 (1982); *State v. Kaneakua*, 61 Haw. 136, 597 P.2d 590 (1979); *Pacific Insurance Co., Ltd. v. Oregon Automobile Insurance Co.*, 53 Haw. 208, 490 P.2d 899 (1971).

Maldonado's contention that "net" means "secondary" lacks merit since such definition would render the term "net" superfluous.

Moreover, we must construe HRS § 294-5(b) in the light of the general legislative scheme and in the context of other provisions of the No-Fault Act. One of the major purposes for the statute was to lower the cost of insurance premiums while, at the same time, providing for adequate reparation. In placing the $800 limit on monthly wage loss recovery, the legislature expressed its conclusion that such an amount should adequately compensate most injured insureds. For those with monthly incomes exceeding the $800 maximum, the legislature provided for the mandatory availability of optional additional insurance coverage. *See* HRS § 294-11. *See also* Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 636; Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1220. Thus, those with higher incomes desiring greater coverage may purchase such coverage.

Finally, since no reasoning has been presented for Maldonado's argument which would distinguish contested workers' compensation cases from the uncontested, the argument has no merit.

IV.

Citing cases and treatises, Maldonado asserts that "the right to subrogation does not begin until the injured party has been made

whole." Opening Brief at 13. He argues, therefore, that the Commissioner's construction of HRS § 294-5(b) violates a basic principle of subrogation law.

Had the legislature intended subrogation rights to apply only where the insured had been fully compensated, it could have easily written such an intent into the provisions of HRS § 294-5(b). Indeed, the legislature did so provide where the insured has received a recovery from the tortfeasor responsible for his injuries. *See* HRS § 294-7. *Cf. First Insurance Co. of Hawaii, Ltd. v. Jackson,* 5 Haw. App. 98, 678 P.2d 1095 (1984), *cert. granted,* 67 Haw. ____ (April 6, 1984).

However, the legislature evinced no desire to fully compensate an individual for his actual wage loss. In fact, in endeavoring to effectuate its intent to provide insurance coverage "at a cost within the reach of every licensed driver," the legislature specifically limited the basic no-fault wage loss benefits to a maximum of $800 per month and provided for optional additional insurance coverage. Consequently, the principle of subrogation law urged on us is irrelevant.

V.

Our supreme court has approved the "pyramiding" or "stacking" of uninsured motorist insurance policies to compensate the injured party for his damages. *See Estate of Calibuso v. Pacific Insurance Co., Ltd.,* 62 Haw. 424, 616 P.2d 1357 (1980); *Allstate Insurance Co. v. Morgan,* 59 Haw. 44, 575 P.2d 477 (1978); *American Insurance Co. v. Takahashi,* 59 Haw. 59, 575 P.2d 881 (1978); *Walton v. State Farm Mutual Automobile Insurance Co.,* 55 Haw. 326, 518 P.2d 1399 (1974). "Stacking" of no-fault policies is permitted under the No-Fault Act. *Yamaguchi v. State Farm Mutual Automobile Insurance Co.,* 706 F.2d 940 (9th Cir. 1983). *See also Mizoguchi v. State Farm Mutual Automobile Insurance Co.,* 66 Haw. 373, 663 P.2d 1071 (1983).

Maldonado urges us to take a further step by approving the "stacking" of no-fault and workers' compensation insurance policies because there is "no meaningful distinction" between such "stacking" and the "stacking" of two no-fault policies or uninsured motorist policies. Opening Brief at 23. Our construction of HRS § 294-5(b) in the light of its legislative history does not permit this.

HRS § 294-5(b) clearly precludes the stacking of no-fault monthly wage loss benefits on top of monthly workers' compensation income benefits in excess of the basic statutory no-fault monthly wage loss benefits limit.

## VI.

In the interpretation of a statute, we must give due deference to the interpretation given it by the agency charged with its administration. *See Chun v. Employees' Retirement System,* 61 Haw. 596, 607 P.2d 415 (1980); *Outdoor Circle v. Harold K. L. Castle Trust Estate, supra. See also Yamaguchi v. State Farm Mutual Automobile Insurance Co., supra.* Here, the legislative history of HRS § 294-5(b) supports the Commissioner's interpretation and we cannot say that the interpretation was palpably erroneous. *See Treloar v. Swinerton & Walberg Co.,* 65 Haw. 415, 653 P.2d 420 (1982); *Waikiki Resort Hotel, Inc. v. City & County,* 63 Haw. 222, 624 P.2d 1353 (1981); *Armbruster v. Nip, supra.* Income benefits from workers' compensation were properly deducted from Maldonado's no-fault wage loss benefits of $800. *See Bobeck v. Public Service Mutual Insurance Co.,* 38 Conn. Supp. 318, 445 A.2d 602 (1981); 1 I. Schermer, *Automobile Liability Insurance* §§ 8.03, 14.07 (2d ed. 1983). *See also Smelser v. Criterion Insurance Co., supra; Featherly v. AAA Insurance Co., supra.*

We hold that the circuit court was correct in affirming the Commissioner's denial of no-fault wage loss benefits to Maldonado. Accordingly, we affirm.

*Judith Ann Pavey (David C. Schutter* with her on the briefs; *Schutter Pavey Cayetano,* of counsel) for claimant-appellant.

*David J. Dezzani (Dewey H. Kim, Jr.* with him on the brief; *Goodsill Anderson Quinn & Stifel,* of counsel) for respondent-appellee.