In the Matter of the Claim of: RUPERTO MALDONADO, Petitioner-Appellant, and TRANSPORT INDEMNITY, Respondent-Appellee

NO. 9323

(CIVIL NO. 71476)

SEPTEMBER 5, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ., AND CIRCUIT JUDGE MOON, IN PLACE OF ASSOCIATE JUSTICE WAKATSUKI, DISQUALIFIED

OPINION OF THE COURT BY PADGETT, J.

We granted certiorari in this appeal by a wage earner injured in an automobile accident. The Intermediate Court of Appeals affirmed a circuit court judgment upholding the refusal, by the no-fault insurance carrier involved, to pay him his actual wage loss of $602.34 per month resulting from the accident. We reverse.

Petitioner Ruperto Maldonado, a bus driver earning $1,534 a month, was injured in an accident while driving an MTL bus on North King Street in Honolulu. Because of his injuries, he was disabled, and could not continue to work. The workers' compensation benefits payable to him were $931.66 a month. Thus, he experienced an actual monthly wage loss of $602.34.

He made a claim for that amount to Transport Indemnity, the no-fault insurer of the bus. It denied his claim. Petitioner then requested a review by the Insurance Division of the Department of Commerce & Consumer Affairs (formerly the Department of Regulatory Agencies). The assigned hearings officer ruled in peti-

tioner's favor, but the Insurance Commissioner reversed and held in favor of the insurance company. On appeal, the First Circuit Court and the Intermediate Court of Appeals affirmed her action.

The facts are not disputed, and the question is plainly one of law. That question is how are the applicable provisions of HRS Chapter 294, the Hawaii No-Fault Insurance Law, to be construed?

The insurance company's position, adopted by the Intermediate Court of Appeals, the First Circuit Court and the Insurance Commissioner, is that HRS § 294-5(b) (which has been repeatedly amended) exempted it from paying any wage loss benefits, whatsoever, to the injured worker because he was receiving workers' compensation disability payments in excess of $800 a month.

Section 294-5(b), as it read at the time of the accident, provided:

§ 294-5 *Payment from which insurer. . . .*

(b) All no-fault benefits shall be paid secondarily and net of any benefits a person is entitled to receive because of the accidental harm from social security laws or workers' compensation laws; provided however, that this section shall be inapplicable to benefits payable to a surviving spouse and any surviving dependent as provided under section 294-4. If the person does not collect such benefits under such laws by reason of the contest of his right to so collect by the person or organization responsible for payment thereof, the injured person, if otherwise eligible, shall, nevertheless, be entitled to receive no-fault benefits and upon payment thereof the no-fault insurer shall be subrogated to the injured person's rights to collect such benefits.[1]

The hearings officer, looking at Senate Standing Committee Report No. 983[2] filed in connection with the 1980 amendment to that section, quoted the following language:

". . . several insurance carriers have taken the position under this section that a claimant who suffers monthly earnings loss caused by a motor vehicle accident is not entitled to earnings loss benefits provided under a basic no-fault insurance policy

---

[1] We note that, in its opinion, the Intermediate Court of Appeals incorrectly cited the 1983 version of HRS § 294-5(b) in place of the 1978 statute which was in effect at the time of the accident in 1980. However, the 1983 amendments are not material to this case.

[2] Incorrectly cited by the hearings officer as No. 98.

coverage if the claimant earned an amount equal to or over $800 a month. For example, if a claimant was earning $1,600 per month but as a result of the accidental harm, his earnings were reduced to $800 per month, the question is raised as to whether the claimant is entitled to receive $800 to make up the loss in his monthly earnings."

The hearings officer then noted that the committee had stated that it:

". . . believes that the claimant under the above circumstances is in fact entitled to the $800 per month earnings loss benefits, and to rule otherwise would be incongruous with the intent of the no-fault statute. If the amount, if any, the claimant actually lost during a monthly period is equal to or less than the amount of applicable coverage, it is our intent that the no-fault carrier is required to pay for such monthly earnings loss."

On the other hand, the Intermediate Court of Appeals quoted the Statement in Conference Committee Report No. 28, in the 1974 Senate Journal at 780 that "all benefits a victim may receive from . . . workmen's compensation, . . . shall be deducted from no-fault benefits which are due."

We point out that the language in question here was part of the originally enacted legislation, and the statements quoted above dealt with later amendments which did not change that language.

Senate Conference Committee Report No. 4, 1973 Senate Journal at 637, in explaining § 294-5(b) stated that "the amount paid would be reduced by any benefit from other sources paid to cover the same loss."

Is the amount of wages, which the petitioner actually lost each month, that is the difference between his wages and his workers' compensation disability benefits, the "same loss" as that for which the workers' disability benefits were paid?

To answer this question, we look first to HRS § 294-3(a) which deals with the "right to no-fault benefits." It provides:

If the accident causing accidental harm occurs in the State, every person, insured under this chapter, and his survivors, suffering loss from accidental harm arising out of the operation, maintenance or use of a motor vehicle has a right to no-fault benefits.

The language just quoted above clearly gives petitioner a right

to no-fault benefits.

What are those benefits in connection with lost wages?

HRS § 294-2(10)(C)(i) provides:

(10) *"No-fault benefits"* with respect to any accidental harm shall be subject to an aggregate limit of $15,000 per person or his survivor and *means:*

. . . .

(C) Monthly earnings loss measured by an amount equal to the lesser of:

(i) $800 per month, or . . . .

(Emphasis added.)

In this case, petitioner has suffered a monthly earnings loss of $602.34, over and above his workers' compensation disability payments, and apparently the $15,000 maximum has not been reached. Therefore, he would be entitled to the benefits claimed since he did have a loss, unless HRS § 294-5(b) bars him. That section however, as its title "Payment from which insurer", and its provisions plainly show, deals not with the claimant's right to benefits (which, as we have noted, is the subject matter of HRS § 294-3), but with priority, as to payments, among insurers.

The Intermediate Court of Appeals and the Insurance Commissioner both concluded that to allow recovery in this case would be inconsistent with the language, and the mechanical workings of HRS § 294-5(b). We see no such difficulty.

In this case, the workers' compensation carrier has paid the first $931.66 of the wages lost, pursuant to the provisions of the workers' compensation statute. It thus is the "primary" carrier with respect to the claim, and the claim against Transport Indemnity under the no-fault policy is only "secondary."

Moreover, the claim is for only $602.34, thus it is a claim for the "net" loss after the other benefits have been paid.

The Insurance Commissioner held the second sentence of HRS § 294-5(b) to be inconsistent with the payment of this claim. That is demonstrably wrong. If the workers' compensation carrier had failed to pay the disability benefits, then under the second sentence of the section in question, the no-fault insurer would have had to step in and pay, not the amount here claimed, but the whole $800 maximum no-fault wage loss benefit. However, the no-fault carrier would have been subrogated to the petitioner's claim against the

defaulting compensation carrier, and thus could have recovered the amount it had paid in that carrier's place and stead, to wit: $197.66 times the number of months of payment.

We see no anomaly, or inconsistency. Allowing petitioner's claim does no violence to any part or word of the statute. On the contrary, it accords with each word and provision thereof.

The Intermediate Court of Appeals concluded its analysis by saying that since the Insurance Commissioner's view was not "palpably erroneous", it would give deference to her ruling.

While we do give deference to agency rulings, particularly when policy matters, and the construction of regulations are involved, we are here dealing with a pure question of statutory interpretation. In reviewing this case, HRS § 91-14(g)(4) is applicable. The Insurance Commissioner's decision is contrary to the clear language and framework of the no-fault statute. Her decision is therefore affected by an error of law, and it is our duty to correct that error.

Reversed.

*Howard Glickstein, David C. Schutter* and *Judith Ann Pavey (Schutter Pavey Cayetano* of counsel) for petitioner-appellant.

*David J. Dezzani (Goodsill Anderson Quinn & Stifel* of counsel) for respondent-appellee.

### DISSENTING OPINION OF NAKAMURA, J., WITH WHOM CIRCUIT JUDGE MOON JOINS

The Intermediate Court of Appeals examined Hawaii Revised Statutes (HRS) § 294-5(b) and found a clear legislative design to reduce the no-fault benefits of a traffic victim by sums received under the workers' compensation law for a particular loss. It thus agreed with the Insurance Commissioner and the Circuit Court of the First Circuit that the insurance carrier was not obliged to pay the claimant wage-replacement benefits provided by the no-fault law since he collected more than $800 a month in temporary total disability benefits from his employer's workers' compensation insurance carrier during his disability. But the majority of this court concludes the Commissioner's decision "is contrary to the clear language and framework of the no-fault statute." I do not join the

majority; like the ICA and the circuit court, I find the Commissioner's decision to be consistent with the statute's clear language and history.

I.

Tracing the history of HRS § 294-5(b), the ICA noted an early legislative declaration that the " *'amount paid* [in no-fault benefits] *would be reduced by any benefit from other sources paid to cover the same loss.'* "[1] *In re Maldonado and Transport Indemnity,* 5 Haw. App. 185, _____, 683 P.2d 394, 398 (1984) (emphasis in ICA opinion). It further observed there was a subsequent expression that " 'all benefits a victim may receive from . . . workmen's compensation . . . shall be deducted from no-fault benefits which are due.' "[2] *Id.* And as § 294-5(b) proclaims that "no-fault benefits shall be paid sec-

---

[1] Cited as supporting this proposition were Sen. Conf. Comm. Rep. No. 4, in 1973 Senate Journal, at 635, and Hse. Conf. Comm. Rep. No. 13, in 1973 House Journal, at 1219. The conference committee reports in relevant part read as follows:

*Benefits which an insurer is required to pay under the no-fault policy would be secondary – the amount paid would be reduced by any benefit from other sources paid to cover the same loss. Such other collateral sources are HMSA or Kaiser health plans, state and federal workmen's compensation, and federal social security benefits.* Additionally, no recovery under any no-fault policy will be reduced by the deduction by the insurer of the federal and state income taxes which would have been due had the victim earned the income replacement.

1973 Senate Journal, at 637; 1973 House Journal, at 1221 (emphasis added).

[2] Cited as supporting this proposition were Sen. Conf. Comm. Rep. No. 28, in 1974 Senate Journal, at 776, and Hse. Conf. Comm. Rep. No. 27, in 1974 House Journal, at 863. The conference committee reports in relevant part read as follows:

Your Committee considered the advisability of making the motor vehicle insurer or the health insurer the primary carrier or payer for medical-rehabilitative benefits under the no-fault policy. After repeated consideration and reconsideration of what may be rather balanced arguments on each side, your Committee recommends that the motor vehicle insurer be made the primary carrier. The result will be to give the health insurer the right of recovery for any medical expenditure in behalf of an automobile accident victim against the motor vehicle insurer. We have been led to believe that this will reduce the demands upon the victim to make more than a single claim, insurers' paper work, and administrative costs. Another argument made favoring this change from the present Act was that this mode of operation would speed the delivery of services and payments to the victim. *We have continued the provision of the Act, however, that all benefits a victim may receive from social security, workmen's compensation, or public assistance shall be deducted from no-fault benefits which are due.*

1974 Senate Journal, at 779-80; 1974 House Journal, at 867 (emphasis added).

ondarily and net of any benefits a person is entitled to receive because of the accidental harm from ... workers' compensation laws," the ICA concluded no-fault benefits were not payable where the claimant's workers' compensation benefits for wage loss exceeded the maximum payable for such loss under the no-fault law. A contention that "net" as employed above essentially meant "secondary" was deemed untenable "since such definition would [have] render[ed] the term 'net' superfluous." 5 Haw. App. at _____, 683 P.2d at 399.

## II.

This court, however, adopts the claimant's thesis in the face of unambiguous language militating against its acceptance and the ICA's reasoned analysis, purporting to find clear language and direction to do so elsewhere in the law. But HRS §§ 294-3(a) and 294-2(10)(C)(i) lend no support for the tortured reading of the language at issue. Section 294-3(a) merely establishes a general right to benefits described and delimited by other sections of the law, and § 294-2(10)(C)(i) prescribes a maximum of $800 in benefits payable for monthly earnings loss. Moreover, the legislative document quoted at length furnishes no reason for depriving a key phrase in § 294-5(b) of meaningful effect.

The committee report, Sen. Stand. Comm. Rep. No. 983-80, in 1980 Senate Journal, at 1502, in no way dealt with the foregoing subsection or the situation at hand. The report accompanied the Senate draft of a House bill subsequently enacted as Act 234, Session Laws of Hawaii 1980, which amended HRS §§ 294-2, 294-10, 294-39, and 805-13 and also added a new provision relating to administrative hearings on claim denials. The quoted portion covered the deletion of § 294-2(10)(C)(iii) from the law, which the legislature felt was necessary to dispel a misapprehension that a traffic victim suffering only a partial loss of earnings was not entitled to no-fault benefits covering the loss. The claimant, however, obviously had no earnings and did not come within the purview of the particular amendment. Instead, he received benefits to cover his wage loss under the workers' compensation law in excess of the $800 maximum payable under the no-fault law for monthly earnings loss. And since no-fault benefits are "net of any benefits a

354

person . . . receive[s] . . . from . . . workers' compensation laws," he was not entitled to anything more in benefits.

Yet this court reads HRS § 294-5(b) as though the key phrase may somehow be ignored, and what the ICA feared has come to pass. The strained construct has also resulted in an anomaly that could not have been within the legislature's contemplation — a loss of $1,534 in gross earnings will now be replaced by $1,534 in tax-free benefits.

I would not disturb the ICA's comprehensive and well-reasoned opinion.