967 P.2d 1066

GOVERNMENT EMPLOYEES INSUR-
ANCE COMPANY, Respondent–Ap-
pellant/Appellant,

v.

Joseph DANG, Claimant–
Appellee/Appellee,

and

State of Hawai'i Department of Com-
merce and Consumer Affairs, Ap-
pellee–Appellee.

No. 21026.

Supreme Court of Hawai'i.

Nov. 19, 1998.

J. Patrick Gallagher, Gallagher & Sakamo-
to, Honolulu (Wayne S. Sakamoto, Joelle Se-
gawa Kane, Leonard R. Gouveia, Jr., Lili A.
Young and Ryan K. Harimoto with him on
the briefs), for respondent-appellant.

Russell K.L. Leu, Leu & Okuda, on the
briefs, Honolulu, for claimant-appellee.

David A. Webber and Deborah Day Emer-
son, Deputy Attorneys General, on the briefs,
for appellee-appellee.

Before MOON, C.J., and KLEIN,
LEVINSON, NAKAYAMA, and RAMIL, JJ.

RAMIL, Justice.

Respondent–Appellant/Appellant Govern-
ment Employees Insurance Company (GEI-
CO) appeals the first circuit court's order
and judgment affirming the decision of the
Appellee–Appellee Reynaldo Graulty, Insur-
ance Commissioner of the State of Hawai'i,
granting summary judgment in favor of

Claimant–Appellee/Appellee Joseph Dang and ruling that GEICO improperly denied him no-fault benefits.

■ GEICO argues four points of error on appeal; however, the crux of all four points, and the dispositive issue on appeal, concerns the statutory interpretation of Hawai'i Revised Statutes (HRS) § 431:10C–308.6 (repealed 1998). GEICO argues that the plain language of subsection 308.6(c) permits the denial of future treatment plans as a denial of continuing treatment or service at any time.

Dang essentially argues that GEICO's plain language argument fails because the terms "continued services or treatment" and "treatment plan" are not synonymous. Dang argues that the Insurance Commissioner's original decision—*i.e.*, that prospective denials of benefits are improper *per se*—should be upheld.

Finally, the Insurance Commissioner revisits his office's interpretation of section 308.6 and has decided that it would be more cost-efficient to permit prospective denials of treatment under this provision (if the insurer has a specified reason), rather than to require the insurer to challenge and deny each treatment plan. Thus, the Insurance Commissioner asks for reversal.

Effective January 1, 1998, the Hawai'i legislature reformed Hawaii's no-fault system [1] and repealed HRS § 431:10C308.6, the peer review provisions of the former no-fault law. *See* 1997 Haw.Sess.L. Act 251, § 308.6 at 1262; Sen.Conf.Comm.Rep. No. 171, in 1997 House Journal, at 925. This renders our interpretation of the statute for future cases next to pointless. The parties in this and other pending cases, however, have a viable interest in the interpretation of section 308.6

as it was applied by the Insurance Commissioner.

Because HRS § 431:10C–308.6(c) permitted a challenge at any time to continuing treatment or services, because HRS § 431:10C–308.6(j) mandated that a provider shall not collect payment from either the insurer or insured if a Peer Review Organization (PRO) determines that future treatment is inappropriate or unreasonable, and because we agree with the current arguments of the Insurance Commissioner, GEICO's challenge and denial in this case should have been sustained. We therefore reverse the Insurance Commissioner's final order dated May 15, 1996 and the first circuit court's order and judgment dated September 22, 1997.

## I. *BACKGROUND*

The facts below are largely uncontroverted. Dang was in a motor vehicle accident on August 2, 1993. At the time, Dang was insured by GEICO. Dang sought treatment from a number of physicians for his injuries sustained in the accident. He complained of cervical strain and neck pain.

On December 6, 1993, Dang's chiropractor, B.J. Williams, D.C., submitted a treatment plan requesting an authorization for treatment in excess of the No–Fault Administrative Rules (fee schedule) that went into effect on June 1, 1993. Dr. Williams sought approval for specific manual chiropractic manipulations and physical therapy to be rendered beginning December 31, 1993 and ending approximately May 6, 1994. Because Dang had received treatment from a number of physicians, on December 10, 1993, GEICO challenged the treatment plan's reasonableness and appropriateness, under the "continuing treatment or services" provision of

---

**1.** The legislative history of the new reform, Act 251, provides in part:

The purpose of this bill is to reduce no-fault insurance premiums and to preserve adequate protection of the rights of drivers.

. . . .

Your committee desires to maintain a system of immediate compensation through personal injury protection benefits without regard to fault, similar to the workers' compensation system, while maintaining tort liability to compensate

accident victims above what they are compensated for by personal injury protection benefits. In this manner, persons with serious and permanent injuries are protected and negligent drivers pay for causing those injuries. *Such a system must weed out the lesser injuries, such as soft-tissue and whiplash, in order to achieve its objectives.*

Sen.Conf.Comm.Rep. No. 171, in 1997 Senate Journal, at 924 (emphasis added).

**10**

HRS § 431:10C–308.6(c). The challenge was forwarded by the Insurance Division of the Department of Commerce and Consumer Affairs (DCCA) to a PRO. Sometime thereafter, GEICO received an undated treatment plan by Eve Gate, dba Rainbow Bodyworks, requesting approval for Swedish massage every other week for Dang, starting February 23, 1994 and ending April 20, 1994. According to GEICO, this plan was also forwarded to the PRO.

On April 4, 1994, Stephen Becker, D.C., of the PRO issued a report rejecting Williams' plan. Dr. Becker's report stated that:

> [i]n the absence of further objective evidence of injury, care beyond 1/10/94 should not be considered a reasonable accident-related expense. Dr. Williams should provide the patient with a course of self-directed therapeutic exercises [i.e., at home].
>
> Despite the apparent severity of the accident and the patient's age, Mr. Dang did not have objective evidence of serious injury immediately following the collision. We attribute this fortunate outcome, in part, to his use of lap and shoulder safety belts which significantly limited his bodily movement upon impact.
>
> . . . .
>
> Here, because of the severity of the accident and the patient's advanced age and his occupational duties which include lifting and manual labor, *it is likely four months of care were appropriate.* Since treatment was not begun until 9/10/93, care through 1/10/94 would be appropriate. *There is no objective evidence which would support an extension of the normal expected recovery period in this case. Further, Mr. Dang has received primarily passive modalities such as manipulation and massage, indicating that he is seeking more for palliative relief than for rehabilitation. These passive therapies should be discontinued to avoid physician dependency.*

(Emphases and brackets added.) Relying upon the PRO report, GEICO issued a denial on April 20, 1994, denying further chiropractic treatment from January 10, 1994 and further massage treatment from February 27, 1994 and quoting the PRO report's statement that, "[i]n the absence of further objective evidence of injury, care beyond 1/10/94 should not be considered a reasonable accident-related expense."

On June 17, 1994, Dang requested an administrative review of the denial of no-fault benefits by the DCCA's Office of Administrative Hearings pursuant to HRS § 91–14 and § 431:10C–212. On June 18, 1994, Dang moved for summary judgment. After an August 10, 1995 hearing, the hearings officer granted Dang's motion on February 8, 1996, finding GEICO's prospective denial of future benefits improper. The hearings officer concluded:

> Respondent's denial of prospective or future benefits was improper. *See Butuyan v. State Farm Mutual Automobile Insurance Company,* MVI–93–257–C (Commissioner's Final Order January 9, 1995); *Eder v. State Farm Mutual Automobile Insurance Company,* MVI–94–135–C (Commissioner's Final Order September 15, 1995); *Virtucio v. State Farm Mutual Automobile Insurance Company,* MVI–94–185–C (Commissioner's Final Order September 11, 1995); *Pecson v. Governmental Insurance Company,* MVI–94–254–C (Commissioner's Final Order September 15, 1995). *The fact that the basis of respondent's denial of future treatment was a peer review report completed pursuant to a challenge to "continued treatment of service" is irrelevant. A challenge to "continued treatment of service" is a challenge to on-going treatment, treatment received or being received by the insured.* A challenge to "continued treatment or service" is a procedure which the insurer can utilize where:
>
> > the insurer received no billing for treatment or services rendered but the insurer questions the insured's continuing treatment or services and desires an evaluation and confirmation by a PRO reviewer that the treatment or services are appropriate and reasonable [i.e., continued treatment is not necessary].
>
> *Ching v. AIG Hawaii Insurance Company,* MVI–94–89–C (Commissioner's Final Order January 5, 1996). The scope of the

denial issued pursuant to such a challenge would depend on whether bills were submitted for the challenged treatment. If bills were submitted, the provisions of HRS §§ 431:10C–304(3) and 431:10C–308.6(c) would govern. If no bills were submitted, then the denial could include all treatments or services rendered up to that date.

Finally, the Hearings Officer notes that Respondent argued that its challenge to "continuing treatment" in response to its receipt of Dr. Williams' treatment plan was proper. However, as stated in *Pecson, supra, a challenge to "continued treatment or service" pursuant to HRS § 431:10C–308.6(c) is not a proper challenge to a treatment plan submitted pursuant to HRS § 431:10C–308.6(d).*

(Emphases and brackets added.) (Footnote omitted.) On February 26, 1996, GEICO filed written exceptions to the hearings officer's findings of fact, conclusions of law, and recommended order. The Insurance Commissioner, nonetheless, issued his final order granting Dang's motion on May 15, 1997. GEICO appealed to the circuit court.

The first circuit court heard arguments on July 28, 1997. On September 22, 1997, the circuit court affirmed the Commissioner's final order, dated May 15, 1996, and denied GEICO's appeal. GEICO timely appealed to this court.

## II. *STANDARD OF REVIEW*

When reviewing a circuit court's review of an administrative agency's decision, the appellate court essentially conducts a secondary appeal. *See Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998). This

court must determine whether the circuit court was right or wrong in its decision, pursuant to the standards set forth in HRS § 91–14(g).[2] The agency's decision carries a presumption of validity, and the appellant carries the heavy burden of convincing the court that the decision is invalid because it is unjust and unreasonable in its consequences. *See Hardin v. Akiba*, 84 Hawai'i 305, 309–310, 933 P.2d 1339, 1343–344 (1997).

Findings of fact will not be disturbed unless clearly erroneous. *See Furukawa v. Honolulu Zoological Society*, 85 Hawai'i 7, 12, 936 P.2d 643, 648, *reconsideration denied*, 85 Hawai'i 196, 940 P.2d 403 (1997) (citation omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *State v. Kane*, 87 Hawai'i 71, 74, 951 P.2d 934, 937 (1998); *see also Britt v. United States Auto. Ass'n*, 86 Hawai'i 511, 516, 950 P.2d 695, 700 (1998).

The interpretation of a statute is a question of law reviewable *de novo*, under the right/wrong standard. *See Gray v. Administrative Dir. of Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997). "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Timoteo*, 87 Hawai'i 108, 113, 952 P.2d 865, 870 (1997) (quoting *State v. Naeole*, 80 Hawai'i 419, 422, 910 P.2d 732, 735 (1996) (citations omitted)).

Indeed, this court, in *In re Claim of Maldonado*, 67 Haw. 347, 351, 687 P.2d 1, 4 (1984), addressed the Insurance Commissioner's interpretation of a statute, stating

[w]hile *we do give deference to agency rulings*, particularly when policy matters,

---

2. The applicable standards of review for decisions issued by administrative agencies are supplied by HRS § 91–14(g) (1993), providing in relevant part:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or
(2) In excess of the statutory authority or jurisdiction of this agency; or
(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

and the construction of regulations are involved, *we are here dealing with a pure question of statutory interpretation.* In reviewing this case, HRS § 91–14(g)(4) is applicable. The Insurance Commissioner's decision is contrary to the clear language and framework of the no-fault statute. Her decision is therefore affected by an error of law, and it is our duty to correct that error.

(Emphases added.)

## III. *DISCUSSION*

The primary issue before this court is whether HRS § 431:10C–308.6 (repealed 1998) permitted an insurer to respond to an insured's specific treatment plan with a challenge to "continuing treatment or services." Our discussion, therefore, is one of statutory construction.

"The starting point in statutory construction is to determine the legislative intent from the language of the statute itself." *State v. Kaakimaka,* 84 Hawai'i 280, 289, 933 P.2d 617, 626, *reconsideration denied* 84 Hawai'i 496, 936 P.2d 191 (1997) (quoting *State v. Ortiz,* 74 Haw. 343, 351–52, 845 P.2d 547, 551–52 (citations omitted), *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993)).

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(10) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. *Gray,* 84 Hawai'i at 148, 931 P.2d at 590

(quoting *State v. Toyomura,* 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*Korean Buddhist Dae Won Sa Temple of Hawaii,* 87 Hawai'i at 229–30, 953 P.2d at 1327–28 (quoting *State v. Cullen,* 86 Hawai'i 1, 8–9, 946 P.2d 955, 963–64 (1997) (some brackets in original and some added)).

"[A] statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses." *State v. Toyomura,* 80 Hawai'i 8, 19, 904 P.2d 893, 904 (1995) (citing 2A N. Singer, *Sutherland Statutory Construction,* § 45.02, at 6 (5th ed. 1992)) (internal quotation marks omitted). "[A] rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable[.]" *State v. Jumila,* 87 Hawai'i 1, 9, 950 P.2d 1201, 1209 (1998) (quoting *Keliipuleole v. Wilson,* 85 Hawai'i 217, 221–22, 941 P.2d 300, 304–05 (1997) (brackets, internal quotation marks, and citations omitted)). "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality." *State v. Arceo,* 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (citation and internal quotation marks omitted).

Turning to the statutory provision in question, HRS § 431:10C–308.6 provided in relevant part:

**Permissible charges in excess of the fee schedules and guidelines for frequency of treatment and reasonable utilization of services; peer review process.** (a) Charges and treatment in excess of fee schedules or treatment guidelines shall be governed by this section. The fee schedules or treatment guidelines may be ex-

ceeded if a provider of treatment or rehabilitative services finds that the nature of the injuries and the process of recovery require a treatment plan resulting in fee schedules or treatment guidelines to be exceeded. If an insurer desires to challenge treatment and rehabilitative services in excess of the fee schedules or treatment guidelines, the insurer may do so by filing, within five working days of a request made pursuant to subsection (d), a challenge with the commissioner for submission to a peer review organization as provided in this section.

(b) For purposes of this section, "peer review organization" means any health care review company, approved by the commissioner, *that engages in peer review for the purpose of determining that medical and rehabilitative services are appropriate and reasonable.* The membership of any peer review organization utilized in connection with this section shall include representation from the profession of the provider whose services are subject to the review. Peer review recommendations or decisions shall contain a statement of the reasons for the recommendations or decisions and the data utilized by the peer review organization.

(c) The commissioner shall contract with one or more peer review organizations established for the purpose of evaluating treatment and rehabilitative services provided to any injured person. The evaluation shall be for the purpose of confirming that such treatment and rehabilitative services are appropriate and reasonable. *An insurer's challenge shall be filed with the commissioner for submission to a peer review organization within ten working days of the insurer's receipt of the provider's bill for treatment or rehabilitative services; provided that a challenge may be made at any time for continuing treatment or services.* Notice of the challenge shall be given in writing to both the insured and the service provider.

(d) A provider may request prior approval from the insurer for treatment exceeding the worker's compensation schedules or treatment guidelines. *The request shall include a treatment plan with a time schedule of measurable objectives and an estimate of the total cost of services. The insurer shall respond to such a request within five working days of mailing of the request, giving authorization or stating in writing the reasons for refusal to the provider and the insured. Any such refusal shall be filed concurrently for submission to the peer review organization. Failure by the insurer to respond within five working days shall constitute approval of the treatment.*

. . . .

(j) *If a peer review organization determines* that a provider has provided treatment or rehabilitative services that are not appropriate or reasonable or *that future provision of such treatment will not be appropriate or reasonable;* or both, *the provider shall not collect payment for the inappropriate or unreasonable treatment or rehabilitative services from either the insurer or the insured.* The peer review organization shall report all such decisions to the regulated industries complaint office of the department of commerce and consumer affairs. *In no case shall the failure of a provider to return any payment made by the insurer for treatment or services determined to be inappropriate or unreasonable obligate the insured to reimburse the insurer for the payment.*

(Emphases added.)

In deciding to grant Dang's summary judgment motion, the hearings officer relied upon the Insurance Commissioner's previous decisions of *Butuyan v. State Farm Mutual Insurance Co.*, MVI–93–257–C and *Pecson v. Government Employees Insurance Company*, MVI–94–254–C. In *Butuyan*, the insurer issued a challenge to a specific treatment plan, not to continuing treatment or services. Unlike the instant case, the PRO report provided that, although the PRO doctor did "not believe any further treatment is necessary beyond perhaps home therapies such as simple exercises and mild heat from time to time[, . . . t]his question calls for sweeping answers, and also is an inappropriate question for a physician who has not seen and examined the patient." Notwithstanding the

fact that the *Butuyan* challenge only addressed a specific treatment plan, and notwithstanding the PRO report's qualification, the insurer denied all "[f]uture benefits except home therapies...." The hearings officer, first, concluded that the insurer's denial was overbroad because it denied benefits not yet claimed or accrued, and, second, ruled the denial improper because it was without a valid basis in light of the PRO report's qualification.

Similarly to the instant case, the insurer in *Pecson* received a specific treatment plan and issued a challenge to "continuing treatment or services." The responsive PRO report stated that Pecson's current treatment of massage, acupuncture, heat, and electrical stimulation would provide little additional benefit and that further health care dollars would be better spent on an MRI or CAT scan. The hearings officer concluded that

> [w]here a specific treatment plan is being challenged under HRS § 431:10C–308.6, *it is procedurally inappropriate* for a respondent to check the block for "Continued treatment or service" on the challenge form....
>
> Next, it should be noted that where a respondent's denial of benefits is based on a peer review report under HRS § 431:10C–308.6 *the unqualified denial of whole or partial benefits after a future date is improper and misleading.... The unlimited prospective denial of future treatments is a denial which, with few exceptions, is at least partially invalid.*

*Pecson*, MVI–94–254–C, at 13–14 (emphases added). Although the hearings officer made the above comments regarding the procedural nature of HRS § 431:10C–308.6, he based his decision primarily upon (1) the lack of evidence supporting the insurer's blanket denial, (2) the lack of information regarding the PRO doctor's qualifications to reach a determination that Pecson's current treatment would provide little additional benefit, and (3) the PRO's failure to determine, in accordance with the statute, whether the treatment proposed was "appropriate and reasonable."

Therefore, the Insurance Commissioner's longstanding interpretation of HRS § 431:10C–308.6 was that an insurer procedurally could not challenge a treatment plan, submitted under subsection 308.6(d), as "continuing treatment or services" under subsection 308.6(c). This rationale rested with the language in subsection 308.6(d) requiring the insurer to respond "within five working days of mailing of the request, giving authorization or stating in writing the reasons for refusal to the provider and the insured.... Failure by the insurer to respond within five working days shall constitute approval of the treatment." The Insurance Commissioner previously interpreted this to mean that each and every treatment plan must be challenged and that a blanket challenge to prospective treatment was impermissible. The Insurance Commissioner, therefore, deemed a challenge to a treatment plan under the "continuing treatment or services" provision *procedurally* improper.

Both GEICO and the Insurance Commissioner now argue that the automatic disallowance of an insurer's denial of no-fault benefits for future treatment or services is not mandated by the language of section 308.6, and that an insurer's prospective denial of continuing treatment benefits on the basis of specific reasons is not improper *per se*. The Insurance Commissioner argues, and has ruled in recent decisions, *see Redmond v. State Farm Mutual Automobile Insurance Co.*, MVI–94–287–P and *Swords v. Commercial Union Insurance Co.*, MVI–95–126, that an insurer should be permitted to challenge either future treatment or services of the same nature after the completion of a particular plan or a newly proposed treatment plan, as well any future treatment of the same nature. The Insurance Commissioner argues that this will reduce costs and encourage the resolution of disputed benefits on the merits, rather than on procedural grounds.

GEICO argues that this interpretation is supported by the legislative intent of HRS § 431:10C–308.6 (repealed 1998).

> The purpose of this bill is to reduce and to stabilize the cost of motor vehicle insurance in Hawaii....
>
> . . . .
>
> This bill, as amended, provides:
>
> . . . .

(4) [f]or extraordinary circumstances to exceed the limits of the medical fee schedule and for a medical peer review process for insurer's evaluation of a treatment. The peer review is a recognition that injuries are essentially a medical rather than a legal issue.

Sen.Stand.Comm.Rep. No. 2201, in 1992 Senate House Journal, at 1018.

■ In short, we agree with GEICO and the Insurance Commissioner's current interpretation. Subsections 308.6(c) and (d) do not expressly prohibit an insurer from challenging and denying a proposed treatment plan as a part of continuing treatment or services. Although the Insurance Commissioner previously interpreted these sections to mean that a challenge to "continuing treatment or services" had to be a challenge to *currently* provided treatment and that a prospective denial of treatment was *per se* improper, we hold that, indeed, HRS § 431:10C–308.6 permitted a challenge to a proposed treatment plan under the continuing treatment or services provision.

■ Although we generally defer to an administrative agency's decision because of its expertise in the field, we do not defer to the agency's interpretation of a statute, particularly when it is wrong. *See Maldonado,* 67 Haw. at 351, 687 P.2d at 4. Correctly, GEICO pointed out that HRS § 431:10C–308.6(c) permitted a challenge to continuing treatment or services *at any time.* Surprisingly, however, none of the parties cited to HRS § 431:10C–308.6(j), which provided:

*If a peer review organization determines* that a provider has provided treatment or rehabilitative services that are not appropriate or reasonable or *that future provision of such treatment will not be appropriate or reasonable,* or both, *the provider shall not collect payment for the inappropriate or unreasonable treatment or rehabilitative services from either the insurer or the insured.* The peer review organization shall report all such decisions to the regulated industries complaint office of the department of commerce and consumer affairs. *In no case shall the failure of a provider to return any payment made by the insurer for treatment or services deter-*

*mined to be inappropriate or unreasonable obligate the insured to reimburse the insurer for the payment.*

(Emphases added.)

■ Reading the plain language of Subsection 308.6(j), the legislature allowed nonpayment of treatment or services when a PRO determines that "future provision of such treatment will not be appropriate or reasonable." Therefore, if a provider ignores the challenge or denial of proposed treatment and provides the treatment, he or she will be unable to collect payment. Reading the plain language of Subsection 308.6(c), the legislature also allowed an insurer's challenge to continuing treatment or services *at any time.* Therefore, an insurer may challenge a proposed treatment plan for injuries received in a particular accident as a part of continuing treatment or services if the insured has already received treatment or services for injuries emanating from the same accident.

■ Reading Section 308.6 in its entirety, in addition to recognizing its legislative history, it seems absurd and illogical that the legislature wanted "to reduce and stabilize the cost of motor vehicle insurance" and yet, at the same time, intended for insurers to expend money challenging and denying each and every treatment plan for the same nature of treatment when a PRO has determined that future treatment of that same nature, or future treatment of *any nature,* is unreasonable or inappropriate. *See Jumila,* 87 Hawai'i at 9, 950 P.2d at 1209; *Arceo,* 84 Hawai'i at 19, 928 P.2d at 861. Even the hearings officer in *Pecson* noted that there are a "few exceptions" to the general prohibition against blanket denials. MVI–94–254–C, at 13–14. We hold that one exception arises when a PRO determines that future treatment *of any nature* is unreasonable or inappropriate.

Here, GEICO challenged the treatment plan within five days of its mailing and forwarded the challenge to a PRO, pursuant to HRS § 431:10C–308.6(d). Because GEICO submitted the challenge pursuant to HRS § 431:10C–308.6(c), this does not negate the fact that it was challenged in a timely man-

ner for its reasonableness and appropriateness.

Furthermore, the hearings officer focused upon the technicalities of GEICO's challenge. Unlike *Pecson,* the instant PRO report determined that *any* future treatment, other than selfdirected exercises, would be unreasonable. Thus, GEICO properly denied the proposed treatment plan based upon the PRO report and properly denied all future treatment for injuries emanating from the same accident.[3]

## IV. CONCLUSION

Based upon the foregoing, we reverse the Insurance Commissioner's final order dated

May 15, 1996 and the circuit court's order and final judgment dated September 22, 1997. We hold that GEICO properly challenged the proposed treatment plan as "continuing services or treatment" and properly denied future services and treatment based upon the PRO report that stated any future treatment and services, with the exception of self-directed home exercises, was unreasonable.

---

3. Because it was not presented in this appeal, we do not address the issue of submission of a treatment plan based upon the exacerbation of an injury after a PRO report determines future treatment is unreasonable or inappropriate.