201 P.3d 614

**Emerson M.F. JOU, M.D., Provider–Appellant,**

v.

**Gary S. HAMADA, Administrator, Disability Compensation Division, and Darwin Ching,[1] Director, Department of Labor and Industrial Relations, State of Hawai'i, Appellees–Appellees**

and

**Argonaut Insurance Company, Respondent–Appellee.**

and

**Emerson M.F. Jou, M.D., Provider–Appellant,**

v.

**Gary S. Hamada, Administrator, Disability Compensation Division, and Darwin Ching, Director, Department of Labor and Industrial Relations, State of Hawai'i, Appellees–Appellees**

and

**Marriott Claim Services Corporation, Respondent–Appellee.**

Nos. 27491, 27539.

Intermediate Court of Appeals of Hawai'i.

Jan. 26, 2009.

As Corrected March 5, 2009.

---

1. Darwin Ching (Ching) succeeded Nelson Befitel (Befitel) as the Director of the Department of Labor and Industrial Relations. Pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c), Ching has been substituted for Befitel as a party in these consolidated appeals.

Stephen M. Shaw, on the briefs, for provider-appellant.

Frances E.H. Lum, Herbert B.K. Lau, Deputy Attorneys General, Department of Attorney General, State of Hawai'i, on the briefs, for appellee-appellee.

Robert A. Chong, Steven L. Goto, Honolulu, on the briefs, for respondent-appellee Marriott Claim Services Corporation.

Kenneth T. Goya, Steven L. Goto, Honolulu, on the briefs, for respondent-appellee Argonaut Insurance Company.

FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.

Opinion of the Court by NAKAMURA, J.

Under the provisions of Hawaii Revised Statutes (HRS) §§ 386–73 (Supp.2007) and 386–87 (1993) of the Hawai'i workers' compensation law, the parties to a decision by the Director of the Department of Labor and Industrial Relations (the Director) have the right to appeal the Director's decision to the Labor and Industrial Relations Appeals Board (LIRAB). The Director has promulgated a rule, Hawaii Administrative Rules (HAR) § 12–15–94(d), prohibiting any appeal of the Director's decisions in billing disputes between employers and medical service providers in workers' compensation cases. HAR § 12–15–94(d) authorizes the Director to resolve such billing disputes without a hearing and provides that "[t]he decision of the [D]irector is final and not appealable."

The question presented in these consolidated appeals[2] is whether the Director was authorized to promulgate a rule prohibiting any appeal of the Director's decisions in bill-

ing disputes between employers and medical service providers. We conclude that the Director's no-appeal rule is inconsistent with the statutory right granted to parties to appeal the Director's decisions under HRS §§ 386–73 and 386–87.

We hold that: 1) the provision prohibiting appeal of the Director's decisions in HAR § 12–15–94(d) is invalid as beyond the Director's rulemaking power; 2) Provider–Appellant Emerson M.F. Jou, M.D., (Dr. Jou) is entitled to a declaratory judgment that the no-appeal provision of HAR § 12–15–94(d) is invalid; 3) the Circuit Court of the First Circuit (circuit court)[3] erred in dismissing Dr. Jou's claims for declaratory relief; and 4) although Dr. Jou cannot pursue the merits of his appeals of the Director's decisions before the circuit court, he is entitled to file appeals of the Director's decisions with the LIRAB.

## BACKGROUND

Dr. Jou is a licensed medical doctor who specializes in physiatry—the diagnosis and treatment of disease by physical methods, including massage, manipulation, exercise, heat, and water. In the two cases underlying these consolidated appeals, Civil No. 05–1–0375 and Civil No. 05–1–1079, Dr. Jou treated patients that had sustained work-related injuries. Respondent–Appellee Argonaut Insurance Company (Argonaut) was the workers' compensation insurance carrier for the patient's employer in Civil No. 05–1–0375, and Respondent–Appellee Marriott Claim Services Corporation (Marriott) was the workers' compensation insurance adjuster for the patient's employer in Civil No. 05–1–1079.

Dr. Jou billed Argonaut and Marriott for his treatments, which included massage therapy performed by licensed massage therapists employed by Dr. Jou. Argonaut and Marriott initially denied payment for the massage therapy on the ground that Dr. Jou did not have a massage establishment ("MAE") license.[4] Dr. Jou responded that as

---

2. By order dated October 28, 2008, we consolidated Appeal Nos. 27491 and 27539 for disposition.

3. The Honorable Eden Hifo presided.

4. HRS § 452-1 (1993) defines the terms "massage therapy," "massage therapist," and "massage therapy establishment" in relevant part as follows:

a licensed physician, he did not need an MAE license.

In each case, the billing dispute remained at a standstill for several years. In November 2004, Dr. Jou filed a request for a hearing before the Director on the denials of reimbursement by Argonaut and Marriott. The Director instructed the parties to negotiate and attempt to resolve the billing dispute

> "[M]assage therapy" ... means any method of treatment of the superficial soft parts of the body, consisting of rubbing, stroking, tapotement, pressing, shaking, or kneading with the hands, feet, elbow, or arms, and whether or not aided by any mechanical or electrical apparatus, appliances, or supplementary aids such as rubbing alcohol, liniments, antiseptics, oils, powder, creams, lotions, ointments, or other similar preparations commonly used in this practice....
>
> "Massage therapist" means any person who engages in the occupation or practice of massage for compensation.
>
> ....
>
> "Massage therapy establishment" means premises occupied and used for the purpose of practicing massage therapy or massage therapy training; provided that when any massage therapy establishment is situated in any building used for residential purposes, the massage therapy establishment premises shall be set apart and shall not be used for any other purpose.

HRS § 452-2 (1993) makes it unlawful for "any person in the State to engage in or attempt to engage in the occupation or practice of massage for compensation without a current massage therapist license issued pursuant to this chapter." HRS § 452-3 (1993) provides that "[n]o massage therapy establishment shall be operated unless it has been duly licensed as provided for in this chapter."

5. HAR § 12-15-94 provides as follows:
> § 12-15-94 *Payment by employer.* (a) The employer shall pay for all medical services which the nature of the compensable injury and the process of recovery require. The employer is not required to pay for care unrelated to the compensable injury.
>
> (b) When a provider of service notifies or bills an employer, the employer shall inform the provider within sixty calendar days of such notification or billing should the employer controvert the claim for services. Failure of the employer to notify the provider of service shall make the employer liable for services rendered until the provider is informed the employer controverts additional services.
>
> (c) The employer, after accepting liability, shall pay all charges billed within sixty calendar days of receipt of such charges except for items where there is a reasonable disagreement. If more than sixty calendar days lapse

pursuant to HAR § 12-15-94.[5] Dr. Jou wrote to Argonaut and Marriott and demanded payment of the full amount of the disputed bills plus interest. Argonaut agreed to pay the outstanding bill of $293.33, which was for services rendered by Dr. Jou's massage-therapist employees. Marriott agreed to pay $2,217.85 for the services rendered by the massage-therapist employees, which comprised the lion's share of the outstanding bill,

> between the employer's receipt of an undisputed billing and date of payment, payment of billing shall be increased by one per cent per month of the outstanding balance. In the event of disagreement, the employer shall pay for all acknowledged charges and shall notify the provider of service, copying the claimant, of the denial of payment and the reason for denial of payment within sixty calendar days of receipt. Furthermore, the employer's denial must explicitly state that if the provider of service does not agree, the provider of service may file a "BILL DISPUTE REQUEST" to include a copy of the original bill with the director within sixty calendar days after postmark of the employer's objection, and failure to do so shall be construed as acceptance of the employer's denial.
>
> (d) In the event a reasonable disagreement relating to specific charges cannot be resolved, the employer or provider of service may request intervention by the director in writing with notice to the other party. Both the front page of the billing dispute request and the envelope in which the request is mailed shall be clearly identified as a "BILLING DISPUTE REQUEST" in capital letters and in no less than ten point type. The director shall send the parties a notice and the parties shall negotiate during the thirty-one calendar days following the date of the notice from the director. If the parties fail to come to an agreement during the thirty-one calendar days, then within fourteen calendar days following the thirty-one day negotiating period, either party may file a request, in writing, to the director to review the dispute with notice to the other party. The director shall send the parties a second notice requesting the parties file position statements, with substantiating documentation to specifically include the amount in dispute and a description of actions taken to resolve the dispute, within fourteen calendar days following the date of the second notice from the director. The director shall review the positions of both parties and render an administrative decision without hearing. A service fee of up to $500 payable to the State of Hawaii General Fund will be assessed at the discretion of the director against either or both parties who fail to negotiate in good faith. The decision of the director is final and not appealable.

but refused to pay for two office visits claimed by Dr. Jou.[6] Both Argonaut and Marriott rejected Dr. Jou's demand for payment of interest.

After obtaining position statements from the parties, the Director issued decisions in both cases.[7] The Director resolved the dispute over the fees billed by Dr. Jou for the two office visits in favor of Dr. Jou and ordered Marriott to pay for those visits. The Director denied Dr. Jou's request that Argonaut and Marriott be required to pay interest. HAR § 12–15–94(c) provides that after accepting liability, an employer shall pay all charges billed within sixty days of receipt "except for items where there is a reasonable disagreement," and that if an "undisputed billing" remains unpaid for more than sixty days, the amount owed "shall be increased by one per cent per month of the outstanding balance." In Dr. Jou's dispute with Marriott, the Director found that "there was a reasonable disagreement over Dr. Jou's fees" and therefore ruled that the employer was not liable for the assessment of one per cent

per month for late payment of the disputed fees. In Dr. Jou's dispute with Argonaut, the Director initially issued a decision finding that the "employer's earlier denial of payment for lack of an MAE license [was] a reasonable dispute of fees." The Director subsequently issued an amended decision which deleted this finding and simply ruled that "with the employer's payment of the disputed fees ... employer shall not be liable for an assessment of one per cent per month simple interest."

Dr. Jou appealed the Director's decisions to the circuit court pursuant to HRS § 91–14 (1993 & Supp.2007)[8] and Hawai'i Rules of Civil Procedure (HRCP) Rule 72 (2005).[9] Appellees–Appellees the Administrator of the Disability Compensation Division (DCD) of the Department of Labor and Industrial Relations (DLIR) and the Director (collectively referred to herein as the "DLIR Appellees") were Appellees in both Civil No. 05–1–0375 and Civil No. 05–1–1079. Argonaut was the Respondent–Appellee in Civil No. 05–1–0375

---

6. Argonaut and Marriott explained that their change of position on payment for the services performed by Dr. Jou's massage-therapist employees was based on the Director's change of position on this issue. Argonaut and Marriott contended that the Director had previously taken the position that services performed by Dr. Jou's massage-therapist employees were not reimbursable because Dr. Jou did not have an MAE license, but that the Director later changed the Director's position and was no longer treating the lack of an MAE license as precluding reimbursement.

7. The decisions were issued by Gary S. Hamada (Hamada), Administrator of the Disability Compensation Division (DCD) of the Department of Labor and Industrial Relations (DLIR). Because Hamada was acting on behalf of the Director, we will not distinguish between Hamada and the Director and will attribute decisions made by Hamada to the Director.

8. HRS § 91–14 provides in relevant part:

§ 91–14 Judicial review of contested cases. (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter; but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law.

Notwithstanding any other provision of this chapter to the contrary, for the purposes of this section, the term "person aggrieved" shall include an agency that is a party to a contested case proceeding before that agency or another agency.

9. HRCP Rule 72 provides in relevant part:

Rule 72. Appeal to a circuit court.

(a) How taken. Where a right of redetermination or review in a circuit court is allowed by statute, any person adversely affected by the decision, order or action of a governmental official or body other than a court, may appeal from such decision, order or action by filing a notice of appeal in the circuit court having jurisdiction of the matter. As used in this rule, the term "appellant" means any person or persons filing a notice of appeal, and "appellee" means every governmental body or official (other than a court) whose decision, order or action is appealed from, and every other party to the proceedings.

. . . .

(e) Statement of case. The appellant shall file in the circuit court concurrently with the filing of appellant's designation, a short and plain statement of the case and a prayer for relief. Certified copies of such statement shall be served forthwith upon every appellee. The statement shall be treated, as near as may be, as an original complaint and the provision of these rules respecting motions and answers in response thereto shall apply.

and Marriott the Respondent–Appellee in Civil No. 05–1–1079. In his notices of appeal and statements of the case to the circuit court, Dr. Jou raised numerous claims, including that the DLIR was biased in favor of insurance companies, that the Director's decisions were made upon unlawful procedure, and that the Director's decisions violated various constitutional and statutory provisions.

In his notice of appeal to the circuit court in Civil No. 05–1–1079, Dr. Jou requested that the circuit court "treat this filing as an action for declaratory judgment that the rules relating to billing disputes, are unconstitutional or invalid pursuant to HRS § 91–7."[10] In his statement of the case accompanying that notice of appeal, Dr. Jou alleged, among other things, that "HAR § 12–15–94 violates statutes relating to pre-judgment interest and *appellate review of DLIR matters*." (Emphasis added.)

Similarly, in his notice of appeal to the circuit court in Civil No. 05–1–0375, Dr. Jou requested that the circuit court "treat this filing as an action for declaratory judgment that the rules relating to billing disputes, particularly HAR § 12–15–94(c), are unconstitutional or invalid pursuant to HRS § 91–7." He also gave notice that his grounds for appeal included a claim that the Director's decision "is affected by other errors of law, particularly denial of the right to appeal to the appellate board." In his statement of the case accompanying the appeal in Civil No. 05–1–0375, Dr. Jou attacked the Director's representation that Argonaut's dispute with Dr. Jou over whether physicians must have an MAE license was reasonable, and then noted that "[b]y agency rule, no appeal to the appellate board may be taken."

The DLIR Appellees, Marriott, and Argonaut moved to dismiss Jou's appeals to the circuit court for lack of jurisdiction. Among the grounds they urged was that HAR § 12–

15–94(d) does not permit appeals of the Director's decisions in billing disputes over medical fees in workers' compensation cases. The DLIR Appellees, in particular, provided a detailed analysis of why the Director believes the no-appeal provision in HAR § 12–15–94(d) is authorized by and not inconsistent with the Hawai'i workers' compensation law. The circuit court in each case dismissed Dr. Jou's appeal for lack of jurisdiction. The Final Judgment in Civil No. 05–1–0375 was entered on August 18, 2005, and the Final Judgment in Civil No. 05–1–1079 was entered on September 9, 2005.

## STANDARD OF REVIEW

▮ We apply the following standard in interpreting statutes:

> In construing statutes, we have recognized that
>
>> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>>
>> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>>
>> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

---

10.  HRS § 91–7 (1993) provides:

§ 91–7 Declaratory judgment on validity of rules. (a) Any interested person may obtain a judicial declaration as to the validity of an agency rule as provided in subsection (b) herein by bringing an action against the agency in the circuit court of the county in which petitioner resides or has its principal place of business. The action may be maintained whether or not petitioner has first requested the agency to pass upon the validity of the rule in question.

(b) The court shall declare the rule invalid if it finds that it violates constitutional or statutory provisions, or exceeds the statutory authority of the agency, or was adopted without compliance with statutory rulemaking procedures.

*Gray [v. Administrative Dir. of the Court]*, 84 Hawai'i [138,] 148, 931 P.2d [580,] 590 [ (1997) ] (quoting *State v. Toyomura*, 80 Hawai'i 8, 18–19, 904 P.2d 893, 903–04 (1995)) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).
*Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (quoting *State v. Davia*, 87 Hawai'i 249, 254, 953 P.2d 1347, 1352 (1998)).

If we determine, based on the foregoing rules of statutory construction, that the legislature has unambiguously spoken on the matter in question, then our inquiry ends. (*See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). When the legislative intent is less than clear, however, this court will observe the "well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." *Brown v. Thompson*, 91 Hawai'i 1, 18, 979 P.2d 586, 603 (1999) (quoting *Keliipuleole v. Wilson*, 85 Hawai'i 217, 226, 941 P.2d 300, 309 (1997)). *See also Government Employees Ins. Co. v. Hyman*, 90 Hawai'i 1, 5, 975 P.2d 211, 215 (1999) ("[J]udicial deference to agency expertise is a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review." (quoting *Richard v. Metcalf*, 82 Hawai'i 249, 252, 921 P.2d 169, 172 (1996))). Such deference "reflects a sensitivity to the proper roles of the politi-

cal and judicial branches," insofar as "the resolution of ambiguity in a statutory text is often more a question of policy than law." *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991).

The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. *See Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) ("To be granted deference, ... the agency's decision must be consistent with the legislative purpose."); *State v. Dillingham Corp.*, 60 Haw. 393, 409, 591 P.2d 1049, 1059 (1979) ("[N]either official construction or usage, no matter how long indulged in, can be successfully invoked to defeat the purpose and effect of a statute which is free from ambiguity....."). Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation. *See, e.g., Government Employees Ins. Co. v. Dang*, 89 Hawai'i 8, 15, 967 P.2d 1066, 1073 (1998); *In re Maldonado*, 67 Haw. 347, 351, 687 P.2d 1, 4 (1984).
*In re Water Use Permit Applications*, 94 Hawai'i 97, 144–45, 9 P.3d 409, 456–57 (2000) (brackets and ellipsis points in original) (footnote omitted).

## DISCUSSION

On appeal to this court, Dr. Jou raises numerous claims attacking the merits of the Director's decision and the circuit court's dismissal for lack of jurisdiction. However, we focus on the issue of whether the no-appeal provision in HAR § 12–15–94(d) is valid because we conclude that this is the pivotal issue. As explained below, we hold that the Director exceeded the Director's statutory authority in promulgating a rule making the Director's decisions in medical fee disputes "final and not appealable."

### I. Applicable Law

HRS § 386–73 (Supp.2007) grants the Director original jurisdiction over disputes arising under the Hawai'i workers' compensation

law, HRS Chapter 386, and establishes the right to appeal from the Director's decisions.[11] HRS § 386–73 provides:

> Unless otherwise provided, the director of labor and industrial relations shall have original jurisdiction over all controversies and disputes arising under this chapter. The decisions of the director shall be enforceable by the circuit court as provided in section 386–91. *There shall be a right of appeal from the decisions of the director to the appellate board* [12] and thence to the intermediate appellate court, subject to chapter 602, as provided in sections 386–87 and 386–88, but in no case shall an appeal operate as a supersedeas or stay unless the appellate board or the appellate court so orders.

(Emphasis added.)

HRS § 386–87 (1993) establishes procedures for a party to appeal a decision of the Director to the LIRAB and for the LIRAB to decide that appeal. HRS § 386–87 states in relevant part:

> (a) A decision of the director shall be final and conclusive between the parties, except as provided in section 386–89,[13] *unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board or the department.* In all cases of appeal filed with the department the appellate board shall be notified of the pendency thereof by the director. No compromise shall be effected in the appeal except in compliance with section 386–78.

> (b) The appellate board shall hold a full hearing de novo on the appeal.

> (c) The appellate board shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of any compensation[14] case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

The decision or order of the LIRAB may, in turn, be appealed to the Intermediate Court of Appeals by the Director or any other party. HRS § 386–88 (Supp.2007).

HRS § 386–21(c) (Supp.2007) provides in relevant part:

> When a dispute exists between an insurer or self-insured employer and a medical services provider regarding the amount of a fee for medical services, the director may resolve the dispute in a summary manner as the director may prescribe; provided that a provider shall not charge more than the provider's private patient charge for the service rendered.

This portion of HRS § 386–21(c) was enacted in 1995 as part of Act 234 which made comprehensive changes to the workers' compensation law.[15] 1995 Haw. Sess. L. Act 234, § 7 at 607–08. The conference committee report accompanying the legislation stated that "[t]he purpose of this bill is to amend Hawai'i's workers' compensation and insurance laws to improve efficiency and cost-effectiveness in the workers' compensation system." Conf. Comm. Rep. No. 112, in 1995 House Journal, at 1005, 1995 Senate Journal, at 810.[16] However, there was no specific

---

11. In discussing the relevant sections in HRS Chapter 386, we will refer to the current version of the statutes. There are no material differences for purposes of our analysis between the current statutes and any prior versions of the statutes in effect during the course of Dr. Jou's cases.

12. HRS § 386–1 (1993) defines the term "appellate board" to mean the LIRAB.

13. HRS § 386–89 (1993) permits the Director to reopen a case under certain conditions.

14. HRS § 386–1 defines the term "compensation" to mean "all benefits accorded by this chapter to an employee or the employee's dependents on account of a work injury as defined in

this section; it includes medical and rehabilitation benefits, income and indemnity benefits in cases of disability or death, and the allowance for funeral and burial expenses."

15. As enacted in 1995, the above-quoted portion of HRS § 386–21(c) used the term "medical service provider," which was changed to "medical services provider" by an amendment enacted in 2006. 2006 Haw. Sess. L. Act 191, § 1 at 831.

16. One of the significant amendments made by Act 234 was to change the method for determining the schedule of medical fees applicable to workers' compensation cases. *See* 1995 Haw. Sess. L. Act 234, § 7 at 607–08.

mention in any of the committee reports of the purpose for the above-quoted amendment to HRS § 386–21(c).

The Director is granted administrative responsibility and rulemaking power with respect to HRS Chapter 386 through HRS § 386–71 (1993) and HRS § 386–72 (Supp. 2007), which provide in relevant part as follows:

§ 386–71 Duties and powers of the director in general. The director of labor and industrial relations shall be in charge of all matters of administration pertaining to the operation and application of this chapter. The director shall have and exercise all powers necessary to facilitate or promote the efficient execution of this chapter and, in particular, shall supervise, and take all measures necessary for, the prompt and proper payment of compensation.

. . . .

§ 386–72 Rulemaking powers. In conformity with and subject to chapter 91, the director of labor and industrial relations shall make rules, not inconsistent with this chapter, which the director deems necessary for or conducive to its proper application and enforcement.

The Director promulgated HAR § 12–15–94 pursuant to the Director's rulemaking power. HAR § 12–15–94 requires an employer to pay for all necessary medical services related to a compensable injury suffered by its employees. *See supra* note 5. It sets deadlines, imposes interest penalties for the non-payment of "undisputed" bills, and establishes procedures for resolving disputes between employers and medical service providers over charges that are billed. *See id.* HAR § 12–15–94(d), which provides for the intervention of the Director where the parties cannot resolve such disputes, states as follows:

(d) In the event a reasonable disagreement relating to specific charges cannot be resolved, the employer or provider of service may request intervention by the director in writing with notice to the other party. Both the front page of the billing dispute request and the envelope in which the request is mailed shall be clearly identified as a "BILLING DISPUTE REQUEST" in capital letters and in no less than ten point type. The director shall send the parties a notice and the parties shall negotiate during the thirty-one calendar days following the date of the notice from the director. If the parties fail to come to an agreement during the thirty-one calendar days, then within fourteen calendar days following the thirty-one day negotiating period, either party may file a request, in writing, to the director to review the dispute with notice to the other party. The director shall send the parties a second notice requesting the parties file position statements, with substantiating documentation to specifically include the amount in dispute and a description of actions taken to resolve the dispute, within fourteen calendar days following the date of the second notice from the director. The director shall review the positions of both parties and render an administrative decision without hearing. A service fee of up to $500 payable to the State of Hawaii General Fund will be assessed at the discretion of the director against either or both parties who fail to negotiate in good faith. *The decision of the director is final and not appealable.*

(Emphasis added.)

For its statutory authority, HAR § 12–15–94 identifies HRS §§ 386–71 and 386–72, which grants the Director general administrative and rulemaking power, as well as HRS §§ 386–21 (Supp.2007) and 386–26 (Supp.2007). HAR § 12–15–94 identifies HRS §§ 386–21 and 386–26 as the statutes HAR § 12–15–94 attempts to implement.[17]

17. The argument of the DLIR Appellees, Marriott, and Argonaut that HRS § 386–21(c) provides statutory authority for the no-appeal provision of HAR § 12–15–94(d) will be discussed *infra*. None of the parties, however, refer to HRS § 386–26 in their briefs. HRS § 386–26 provides that the Director 1) "shall issue guide-

lines for the frequency of treatment and for reasonable utilization of medical care and services by health care providers that are considered necessary and appropriate under this chapter"; and 2) shall adopt updated medical fee schedules and, "where deemed appropriate, shall establish separate fee schedules for services of health care

## II. The No–Appeal Provision is Invalid

■ HRS §§ 386–73 and 386–87 set forth the right to appeal from the decisions of the Director in workers' compensation cases. Construing the words of HRS §§ 386–73 and 386–87 according to their ordinary meaning, we conclude that they give a party, such as Dr. Jou, the right to appeal the decision of the Director in a medical fee dispute to the LIRAB. Thus, the no-appeal provision of HAR § 12–15–94(d) is invalid as inconsistent with HRS Chapter 386, and the Director exceeded the Director's rulemaking authority in making the Director's decisions in medical fee disputes final and non-appealable.

HRS § 386–73 provides in relevant part: "There shall be a right of appeal from the decisions of the director to the appellate board ... as provided in sections 386–87...." HRS § 386–87, in turn, authorizes "either party" to a decision of the Director to appeal that decision to the LIRAB.

■ HRS Chapter 386 does not define the term "party." We generally interpret words that are not specifically defined by a statute according to their ordinary meaning. *Wright v. Home Depot U.S.A., Inc.,* 111 Hawai'i 401, 412 n. 9, 142 P.3d 265, 276 n. 9 (2006); *see State v. Hicks,* 113 Hawai'i 60, 71, 148 P.3d 493, 504 (2006) ("[C]ourts are to give words their ordinary meaning unless something in the statute requires a different interpretation." (brackets omitted)). HRS § 1–14 (1993) provides that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning."

■ Merriam–Webster's Collegiate Dictionary defines the word "party" as "1: a person or group taking one side of a question, dispute, or contest ... 4: a particular individual: PERSON." *Merriam–Webster's Collegiate Dictionary* 904 (11th ed.2003); *see Leslie v. Bd. of Appeals of County of Hawai'i,* 109 Hawai'i 384, 393, 126 P.3d 1071, 1080 (2006) (stating that when a term is not

statutorily defined, courts "may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of [the term]" (internal quotation marks omitted). Dr. Jou was clearly a "party" to the Director's decisions in Dr. Jou's fee disputes with Marriott and Argonaut under this definition. Thus, construing the term "party" according to its ordinary meaning, we conclude that Dr. Jou was entitled to appeal the Director's decisions to the LIRAB pursuant to HRS §§ 386–73 and 386–87.

■ Our conclusion is supported by the principle that the right to appeal is not a common law right, but is statutory and subject to control by the Legislature. *See In re Tax Appeal of Lower Mapunapuna Tenants Ass'n,* 73 Haw. 63, 69, 828 P.2d 263, 266 (1992); *Korean Buddhist Dae Won Sa Temple of Hawai'i v. Concerned Citizens of Palolo,* 107 Hawai'i 371, 380, 114 P.3d 113, 122 (2005). It was the Legislature's prerogative, and not the prerogative of the Director, to determine the extent to which the decisions of the Director could be appealed to the LIRAB.

Hawai'i courts have also adopted the principle of statutory construction that "[s]tatutes governing appeals are liberally construed to uphold the right of appeal." *Credit Associates of Maui, Ltd. v. Montilliano,* 51 Haw. 325, 329, 460 P.2d 762, 765 (1969); *Jordan v. Hamada,* 62 Haw. 444, 448, 616 P.2d 1368, 1371 (1980); *see Ariyoshi v. Hawaii Pub. Employment Relations Bd.,* 5 Haw.App. 533, 538, 704 P.2d 917, 923 (1985) (stating that "in this jurisdiction there is a policy favoring judicial review of administrative decisions"); *In re Hawaii Gov't Employees' Ass'n,* 63 Haw. 85, 87, 621 P.2d 361, 363 (1980) (same). "[O]ur policy ... has always been to permit litigants, where possible, to appeal[.]" *Jordan,* 62 Haw. at 451, 616 P.2d at 1373 (internal quotation marks and citation omitted). This principle of statutory construction supports our interpretation of the term "party" as used in HRS § 386–87.

providers." Because HRS § 386–26 was not cited by the parties and is not pertinent to our analysis of whether the no-appeal provision of

HAR § 12–15–94(d) is valid, we will not further discuss HRS § 386–26.

The DLIR Appellees, however, argue that Dr. Jou was not a "party" to the Director's decisions within the meaning of HRS § 386–87 and thus did not have the right to appeal the Director's decisions. The DLIR Appellees contend that there is a distinction between the term "party" and the term "person" as used in HRS Chapter 386. According to the DLIR Appellees, the term "party" as used in HRS Chapter 386 has a specialized meaning and it only refers to "the claimant, his/her dependents, the employer, and its insurance carrier or adjuster, and sometimes, the Special Compensation Fund."

In support of their claim, the DLIR Appellees cite HRS §§ 386–27 (1993) and 386–98 (Supp.2007), which specifically authorize a "person" aggrieved by a decision of the Director issued pursuant to those sections to appeal.[18] The DLIR Appellees contend that there would be no need for HRS §§ 386–27 and 386–98 to give specific authorization for an aggrieved "person" to appeal if all decisions of the Director were appealable. The DLIR Appellees further argue that the use of the term "person" in these sections demonstrates that there is a distinction between "party" and "person" under HRS Chapter 386 and shows that the Legislature did not intend to give every participant in the workers' compensation system the right to appeal pursuant to HRS §§ 386–73 and 386–87.

We are not persuaded by the DLIR Appellees' arguments. The DLIR Appellees' claim that the term "party" has a specialized meaning under HRS Chapter 386 that excludes a "person" who is a medical service provider, such as Dr. Jou, is belied by the Director's own use of the term "party" in the Director's rules. In HAR § 12–15–94(d), the provision at issue in this appeal, the Director repeatedly uses the term "party" to refer to a medical service provider involved in a billing fee dispute. HAR § 12–15–94(d) states:

(d) In the event a reasonable disagreement relating to specific charges cannot be resolved, the employer or provider of service may request intervention by the director in writing with notice to the other *party*. . . . The director shall send the *parties* a notice and the *parties* shall negotiate during the thirty-one calendar days following the date of the notice from the director. If the *parties* fail to come to an agreement during the thirty-one calendar days, then within fourteen calendar days following the thirty-one day negotiating period, either *party* may file a request, in writing, to the director to review the dispute with notice to the other *party*. The director shall send the *parties* a second notice requesting the *parties* file position statements, with substantiating documentation. . . . The director shall review the positions of both *parties* and render an administrative decision without hearing. A service fee of up to $500 payable to the State of Hawaii General Fund will be assessed at the discretion of the director against either or both *parties* who fail to negotiate in good faith. The decision of the director is final and not appealable.

(Emphases added.) The Director's use of the term "party" in HAR § 12–15–94(d) to refer to a medical service provider supports our view that Dr. Jou qualifies as a "party" under HRS § 386–87.

The inclusion within HRS §§ 386–27 and 386–98 of references to the right of an aggrieved "person" to appeal decisions of the Director made under those sections does not change our analysis. HRS §§ 386–73 and 386–87 broadly authorize a party to appeal the Director's decisions, which, under the ordinary meaning of the term "party," includes medical service providers involved in fee disputes decided by the Director. The Legislature's particular reference to the right of an aggrieved "person" to appeal decisions made by the Director under HRS

---

18. HRS § 386–27 authorizes the Director to qualify health care providers rendering services under HRS Chapter 386 and to sanction them for non-compliance with established requirements. HRS § 386–27(d) provides that "[a]ny person aggrieved by a decision of the director may appeal the decision under section 386–87."

HRS § 386–98(e) authorizes the Director to impose administrative penalties on any person committing fraud. HRS § 386–98(f) provides that "[a]ny person aggrieved by the [Director's] decision [to impose administrative penalties] may appeal the decision under sections 386–87 and 386–88."

§§ 386–27 and 386–98 does not mean that other decisions, such as those involving billing fee disputes, are not subject to appeal pursuant to the general provisions of HRS §§ 386–73 and 386–87.

■ The DLIR Appellees, Argonaut, and Marriott claim that HRS § 386–21(c) provides specific authorization for the Director's promulgation of the no-appeal provision in HAR § 12–15–94(d). We reject this claim. The DLIR Appellees, Argonaut, and Marriott rely upon the portion of HRS § 386–21(c) that states: "When a dispute exists between an insurer or self-insured employer and a medical services provider regarding the amount of a fee for medical services, the director may resolve the dispute in a summary manner as the director may prescribe[.]" We read this provision as authorizing the Director to promulgate rules permitting *the Director's decisions* in medical fee disputes to be rendered in a summary manner. HRS § 386–21(c), however, does not state that the Director can insulate the Director's own decisions from appeal.

As previously stated, the right to appeal is statutory and it is the Legislature's prerogative to determine the extent to which the decisions of the Director may be appealed. Viewed in the context of the broad grant of the right to appeal the decisions of the Director set forth in HRS §§ 386–73 and 386–87, we conclude that the Legislature would have spoken in more definitive terms had the Legislature intended to authorize the Director by rule to preclude appeal of the Director's own decisions in medical fee disputes. Our conclusion is consistent with the liberal construction of appeal statutes to uphold the right of appeal and the judicial policy permitting litigants, where possible, to appeal. *See Jordan,* 62 Haw. at 448, 451, 616 P.2d at 1371, 1373.

We note that in a different context, the Legislature had no difficulty in clearly expressing its intent to make an administrative decision non-appealable. HRS § 128D–34 (Supp.2007) provides that decisions of the Department of Health on an application to conduct a voluntary response action "shall be final, with no right of appeal." Thus, the Legislature knows how to definitively elimi-nate the right to appeal an administrative decision when that is its intent.

## III. The Remedy

■ The Director's decisions in Dr. Jou's medical fee disputes with Marriott and Argonaut were not pursuant to an agency hearing and were not rendered in contested cases. *See* HRS § 386–21(c) (authorizing the Director to resolve medical fee disputes in a summary manner); HAR § 12–15–94(d) ("The director shall review the positions of both parties and render an administrative decision without hearing."); HRS § 91–1 (1993) (defining "[c]ontested case" to mean "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing"). Thus, Dr. Jou was not entitled to appeal the *merits* of the Director's decisions to the circuit court pursuant to HRS § 91–14, which, in relevant part, permits appeals of final decisions in contested cases. Dr. Jou's right to appeal the merits of the Director's decisions was limited to appeals filed with the LIRAB. Accordingly, the circuit court did not have jurisdiction to resolve the merits of Dr. Jou's appeals of the Director's decisions.

■ Dr. Jou's appeals to the circuit court, however, included claims for declaratory relief pursuant to HRS § 91–7, such as the claim for a judicial declaration that the no-appeal provision of HAR § 12–15–94(d) was invalid. There is no suggestion that the circuit court lacked jurisdiction to resolve Dr. Jou's claims for declaratory relief. Because the no-appeal provision of HAR § 12–15–94(d) is inconsistent with and not authorized by HRS Chapter 386, it is invalid as beyond the scope of the Director's rulemaking authority. Accordingly, we conclude that the circuit court erred in dismissing Dr. Jou's claims for declaratory relief and in failing to declare the no-appeal provision to be invalid.

■ The DLIR Appellees argue that even if we conclude that Dr. Jou had the right to appeal the Director's decisions to the LIRAB, Dr. Jou's appeals were untimely because they were not filed within twenty days of the Director's decisions as required by HRS § 386–87. Instead, Dr. Jou followed the time period for appealing a contested

case under HRS § 91–14 and filed his notices of appeal with the circuit court within the thirty-day time period established by HRS § 91–14. We conclude, under the rather unique circumstances of this case, that Dr. Jou cannot be faulted for failing to file his notices of appeal with the LIRAB within the twenty-day time limit as required by HRS § 386–87. At the time his appeals matured, Dr. Jou was precluded by HAR § 12–15–94(d) from appealing the Director's decisions to the LIRAB. We hold that Dr. Jou shall have twenty days from the effective date of our judgment in these consolidated appeals to file appeals of the Director's decisions with the LIRAB. We express no opinion on the merits of Dr. Jou's challenges to the Director's decisions in these cases.

## CONCLUSION

For the foregoing reasons, we affirm the Judgments in Civil No. 05–1–0375 and Civil No. 05–1–1079, except that we vacate the portions of the Judgments that dismissed Dr. Jou's claims for declaratory relief. We direct the circuit court to enter judgment in favor of Dr. Jou declaring that the no-appeal provision of HAR § 12–15–94(d) is invalid, and we remand the cases to the circuit court for further proceedings consistent with this opinion. Dr. Jou shall be permitted to file appeals of the Director's decisions with the LIRAB within twenty days of the effective date of our judgment in these appeals.[19]

**19.** Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 36(c) (2008) provides:

(c) *Effective date of intermediate court of appeals' judgment.* The intermediate court of appeals' judgment is effective upon the ninety-first day after entry or, if an application for a writ of certiorari is filed, upon entry of the supreme court's order dismissing or rejecting the application or, upon entry of supreme court's order affirming in whole the judgment of the intermediate court of appeals.